UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DAVID LOVITCH and JESSICA LOVITCH,

                Plaintiffs,

- against -

COUNTY OF ORANGE,

                Defendant.

**OPINION AND ORDER**

11 Civ. 2536 (ER)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 7/19/13

Ramos, D.J.:

Defendant County of Orange (the "County" or "Defendant") brings this Motion for Summary Judgment seeking dismissal of Plaintiffs' complaint in its entirety pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, Defendant's motion is GRANTED.

## I. Background

### A. Procedural History

Plaintiffs David Lovitch and Jessica Lovitch[1] ("Plaintiffs") commenced this action against Allyson Lovitch, Laurel Ralph, Richard Ralph, Frank Basile ("Basile") and County of Orange ("Defendants") on April 13, 2011, alleging state and federal claims for false arrest and malicious prosecution, a civil rights conspiracy claim pursuant to 42 U.S.C. § 1985, a state law negligence claim against the County and Basile, and a state law claim for negligent infliction of emotional distress against defendants Allyson Lovitch, Laurel Ralph and Richard Ralph. *See* Doc. 1 ("Compl."). On July 20, 2012, the Court entered a partial default judgment against defendants Allyson Lovitch, Richard Ralph and Lauren Ralph as to liability alone. Doc. 22. On September 18, 2012, pursuant to a stipulation executed by the parties and entered by this Court,

---

[1] Jessica Lovitch is a named plaintiff in this case; however, there are no claims asserted on behalf of Jessica Lovitch in the complaint.

Plaintiffs discontinued the action with prejudice as to Basile. Doc. 23. Therefore, the only unresolved claims are those asserted against the County.

### B. Factual Background

The following facts are undisputed.[2] In an effort to provide the most comprehensive and effective investigations into reports of child sexual abuse, Orange County created a multi-disciplinary investigation team (the "MDT") to combine the resources and abilities of the Orange County Department of Social Services, law enforcement agencies, and the Orange County District Attorney's office. Def.'s Rule 56.1 Stmt. ("Def.'s 56.1 Stmt.") ¶ 2, Doc. 38. The MDT is comprised of a case supervisor and senior caseworkers from Orange County Child Protective Services ("C.P.S."), and a law enforcement supervisor and investigators from the New York State police and local police departments, all of whom are assigned exclusively to the MDT. *Id.* ¶ 3. During the time period relevant to this action, Will Garcia ("Garcia"), a senior investigator with the New York State police, was the supervisor and senior investigator assigned to the MDT. *Id.* ¶ 5. Basile, a police officer with the Washingtonville Police Department, was assigned to the MDT as an investigator. *Id.* ¶¶ 7, 13. Basile's role on the MDT was to investigate reports of child sexual abuse, physical abuse and child fatalities. *Id.* ¶ 22. During his tenure at the MDT,

---

[2] In responding to Defendant's Rule 56.1 Statement, Plaintiffs' counsel indicates that forty-nine of the fifty statements of material fact proffered by the County are undisputed. *See* Pl.'s Response to Def.'s Stmt. of Facts Pursuant to Local R. 56.1 ("Pl.'s 56.1 Stmt."), Doc. 44. However, the one statement that Plaintiffs' counsel purports to dispute in Defendant's Rule 56.1 Statement, Pl.'s 56.1 Stmt. ¶ 44, is not supported by any evidence in the record. Plaintiffs' counsel cites to "Lovitch Affidavit" to support the response controverting Defendant's statement of fact in paragraph 44, but there is no such affidavit in the record. In opposing a motion for summary judgment pursuant to Fed. R. Civ. P. 56, litigants in this District are required by our Local Rules to specifically respond to the assertion of each purported undisputed fact by the movant and, if controverting any such fact, to support its position by citing to admissible evidence in the record. *See* Local R. 56.1(b), (d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact). Accordingly, pursuant to Local Rule 56.1(c), all of the facts set forth in Defendant's Rule 56.1 Statement that are supported by citations to admissible evidence in the record have been deemed admitted for purposes of this motion. Moreover, the Court finds that even if Plaintiffs had properly controverted the facts in Defendant's paragraph 44 with admissible evidence, the grant of summary judgment would still be appropriate because of the failure of Plaintiffs to establish *Monell* liability.

Basile, who remained an employee of the Washingtonville Police Department, was supervised solely by Garcia. *Id.* ¶¶ 14, 17-18. It is undisputed that Basile was not employed by the County, was not trained by the County,[3] and was not supervised by anyone at the County. *Id.* ¶¶ 13, 15-16, 28.

On October 1, 2007, the MDT received a report from the New York State Child Abuse and Maltreatment Registry ("S.C.R.") alleging sexual abuse by David Lovitch.[4] *Id.* ¶ 25. Garcia reviewed the report and determined that a criminal investigation was appropriate. *Id.* ¶ 27. Garcia then assigned Basile to the investigation. *Id.* ¶ 28. In investigating the S.C.R. report, Basile worked alongside a C.P.S. caseworker, Cathy Drake, who was assigned to the matter by the C.P.S. Case Supervisor. *Id.* ¶¶ 29-30. Pursuant to MDT protocol, Drake and Basile developed a joint investigation plan that met the needs of both C.P.S. and law enforcement; *id.* ¶¶ 31-32; however, the C.P.S. caseworkers and supervisors were not involved in decisions relating to criminal prosecution, and law enforcement personnel had no role in determining the results of the C.P.S. investigation. *Id.* ¶¶ 47-50. Throughout the investigation, Basile remained under the direct supervision of Garcia; Basile was not supervised by anyone at C.P.S. *Id.* ¶ 28.

Based on interviews with the Lovitch children, and a sworn statement provided by the older child, Basile believed that Mr. Lovitch had committed the criminal offense of endangering the welfare of a child.[5] *Id.* ¶¶ 33-37. Basile discussed the investigation and proposed criminal charges with Garcia, and Garcia approved the charges and the arrest of Mr. Lovitch. *Id.* ¶¶ 38-

---

[3] The Court notes that Basile received extensive training from the State and other non-County entities regarding, *inter alia*, investigating allegations of child abuse and interviewing child victims of sex offenses, prior to his assignment to the MDT. Def.'s 56.1 Stmt. ¶¶ 8-12, 19-20.

[4] The S.C.R. receives hotline tips of child abuse and child sexual abuse and then sends reports of the tips to the appropriate County for investigation. *Id.* ¶ 23. In Orange County, the MDT reviews all hotline tip reports regarding child sexual abuse. *Id.* ¶¶ 1, 24.

[5] The details of the investigation and the substance of the alleged report of sexual abuse are not material to the Court's resolution of the pending motion.

3

39.  Accordingly, on November 28, 2007, Basile filed a criminal court information charging Mr. Lovitch with endangering the welfare of a child.  *Id.* ¶ 45.  Basile subsequently contacted Mr. Lovitch's attorney and arranged a time for Mr. Lovitch to come to the police station for processing.  *Id.* ¶ 43.  On January 22, 2008, Basile arrested Mr. Lovitch and issued an appearance ticket for an arraignment in the Town of Montgomery Court on February 12, 2008.  *Id.* ¶¶ 43-44; Stockburger Decl. Ex. C.  Mr. Lovitch was released the same day.  Def.'s 56.1 Stmt. ¶ 44.  The criminal case against Mr. Lovitch was scheduled for a bench trial on April 15, 2010.  *Id.* ¶ 46.  Plaintiffs assert—but do not proffer any evidence to establish—that Mr. Lovitch was prosecuted "up to and through the trial date of his case," but the charges against him were ultimately dismissed by the prosecutor "in the interests of justice."  Pl.'s Mem. Law Opp. Def.'s Mot. Summ. J. ("Pl.'s Mem.") 10, 14, Doc. 43.

## II. Legal Standard Governing Motions for Summary Judgment

Summary judgment is only appropriate where the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, [and] other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), 56(c)(1)(A).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Osberg v. Foot Locker, Inc.*, 907 F. Supp. 2d 527, 532 (S.D.N.Y. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005).  "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."  *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex Corp.*, 477 U.S. at 322-23); *see also* Fed. R. Civ. P. 56(c)(1)(B).  The burden then shifts to the non-moving party to come forward with admissible evidence sufficient to support each essential element of the claim, and "designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted); *see also Cordiano*, 575 F.3d at 204.

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'"  *Brod v. Omya, Inc.,* 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  A motion for summary judgment cannot be defeated on the basis of conclusory assertions, mere denials or unsupported alternative explanations of facts.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008); *see also Senno*, 812 F. Supp. 2d at 467 (citing *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998)).  "The nonmoving party cannot defeat summary judgment by 'simply showing that there is some metaphysical doubt as to the material facts,'" *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir.

2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)), it "must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson*, 477 U.S. at 256-57).

"Summary judgment is properly granted when the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Abramson v. Pataki,* 278 F.3d 93, 101 (2d Cir. 2002) (quoting *Celotex Corp.,* 477 U.S. at 322). In that situation, there can be no genuine dispute as to any material fact, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

### III. Section 1983 Claims Against the County

Defendant argues that Plaintiffs' claims against the County must fail because Plaintiffs have failed to allege any facts demonstrating the existence of an official policy or custom of the municipality that led to any constitutional violations. Mem. Law of Def. County of Orange ("Def.'s Mem.") 19-20, Doc. 37.

#### A. Municipal Liability

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A municipality cannot be held liable under § 1983 on a theory of *respondeat superior*. *Id.* "[T]o prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."

6

*Roe v. City of Waterbury,* 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690-91).

"The fifth element reflects the notion that 'a municipality may not be held liable under § 1983 solely because it employs a tortfeasor.'" *Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 438-39 (S.D.N.Y. 2012) (quoting *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 403 (1997)).  Thus, a plaintiff must allege that such a municipal policy or custom is responsible for his injury.  *Brown,* 520 U.S. at 403-04; *see also Connick v. Thompson*, --- U.S. ----, 131 S. Ct. 1350, 1359 (2011) ("A municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell*, 436 U.S. at 692)).

Courts in this Circuit apply a two prong test for § 1983 claims brought against a municipality.  *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (citation omitted).  First, the plaintiff must "prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer."  *Id.* (citation omitted).  Second, the plaintiff must establish a "'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Hayes*, 853 F. Supp. 2d at 439 (quoting *City of Canton v. Harris,* 489 U.S. 378, 385 (1989)).

To satisfy the first requirement, a plaintiff must prove the existence of:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (internal citations and quotation marks omitted); *see also Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (quoting *Moray* and updating citations to cases). Although a plaintiff is not required to identify an express rule or regulation to establish a *Monell* claim, proof of "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry,* 141 F.3d 56, 61 (2d Cir. 1998) (quoting *Ricciuti v. N.Y. City Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991)) (internal quotation marks omitted); *see also City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 127 (1988) (plurality opinion) (explaining that only municipal officials who have "final policymaking authority" concerning the particular activities giving rise to a plaintiff's claims "may by their actions subject the government to § 1983 liability" (citation omitted)). "In the end, therefore, a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury." *Hayes*, 853 F. Supp. 2d at 439 (quoting *Roe,* 542 F.3d at 37) (internal quotation marks omitted).

   **B. Discussion**

   Plaintiffs' claims against the County are based entirely on the alleged conduct of Basile. Compl. ¶¶ 21-25, 31-37; *see also* Stockburger Decl. Ex. D, ¶ 13. In the Complaint, Plaintiffs allege that the County was the employer and supervisor of Basile, Compl. ¶ 11, that Basile was "acting in the capacity of agent, servant and employee of Defendant County, as an Investigator," *id.* ¶ 3, and that the "County was responsible for [the] training, supervision and conduct" of Basile. *Id.* ¶ 12. However, in opposing the County's summary judgment motion, Plaintiffs now concede that Basile was never employed, supervised, or trained by the County. Pl.'s 56.1 Stmt. ¶¶ 13, 15-18. Plaintiffs' arguments in opposition to the County's motion for summary judgment

are based entirely on new theories of municipal liability, none of which appear in the Complaint.[6]  *See* Pl.'s Mem. 2, 10-11, 17-18.  "It is black letter law that a party may not raise new claims for the first time in opposition to summary judgment."  *Brandon*, 705 F. Supp. 2d at 278 (citation omitted); *see also Bush v. Fordham Univ.,* 452 F. Supp. 2d 394, 406 (S.D.N.Y. 2006) ("[C]ourts in this district have consistently ruled that it is inappropriate to raise new claims for the first time in opposition to summary judgment.") (citation and internal quotation marks omitted).  Therefore, the Court will not consider the municipal policies, customs and practices that are raised for the first time in Plaintiffs' opposition papers.

Because Plaintiffs have failed to adduce *any* evidence, or even to allege, the existence of *any* County policies or customs that were the driving force behind the alleged constitutional deprivations in the Complaint, the County's motion for summary judgment on Plaintiffs' § 1983 claims is GRANTED.  *See, e.g.*, *Brandon*, 705 F. Supp. 2d at 278 (granting summary judgment on *Monell* claim because plaintiff provided no evidence to support the municipal policy or custom alleged in the complaint); *see also Webster v. City of New York,* 333 F. Supp. 2d 184, 207 (S.D.N.Y. 2004) (granting summary judgment on *Monell* claim where "[t]he record [] is

---

[6] In support of the state law negligence claim against the County, Plaintiffs did allege that "the County, as the supervisory body responsible for the conduct of [] Basile, had a duty to assure proper training and supervision of the personnel, or to implement meaningful procedures to discourage lawless official conduct, and did fail to properly train and/or supervise its employee Basile."  Compl. ¶ 41.  However, Plaintiffs did not base their *federal* claims against the County on allegations of a failure to train or supervise, and, as noted above, it is undisputed that Basile was not an employee of the County, and that the County was not responsible for supervising or training Basile.  Pl.'s 56.1 Stmt. ¶¶ 13, 15-18.  Moreover, Plaintiff has not proffered evidence, or even alleged the existence, of facts that indicate a lack of training or supervision by the County that amounts to a deliberate indifference to the rights of individuals subject to investigation by the MDT following a report of child abuse to S.C.R.  *See Jenkins v. City of New York*, 478 F.3d 76, 94-95 (2d Cir. 2007) (explaining that "the inadequacy of police training may only serve as the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact," and, in order to prove deliberate indifference, a plaintiff must show:  (1) "that a policymaker knows to a moral certainty that her employees will confront a given situation," (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or [] there is a history of employees mishandling the situation," and (3) "the wrong choice by the [] employee will frequently cause the deprivation of a citizen's constitutional rights." (internal quotation marks and citations omitted)).  Therefore, even if this Court were to construe the Complaint as alleging a *Monell* claim against the County on the basis of a failure to train or supervise, such a claim would not survive the instant motion.

barren of specific evidence demonstrating the existence of a municipal policy or custom such as would satisfy Plaintiffs' burden").

**IV. Section 1985 Conspiracy Claim**

The County has also moved for summary judgment on Plaintiffs' § 1985 conspiracy claim, because the Complaint is devoid of factual allegations to support the elements of a conspiracy and Plaintiffs did not allege any class-based, invidious discrimination. Def.'s Mem. 22-23. In opposing the County's motion, Plaintiffs assert arguments in support of a conspiracy claim pursuant to § 1983; however, the Complaint does not contain a § 1983 conspiracy claim. *See* Compl. ¶¶ 31-39. As noted above, Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to the County's motion for summary judgment. *See, e.g.*, *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals,* 812 F. Supp. 2d 357, 363 n.9 (S.D.N.Y. 2011) (declining to consider facts raised for the first time in opposition papers); *see also Scott v. City of New York Dep't of Corr.*, 641 F. Supp. 2d 211, 229 (S.D.N.Y. 2009) (collecting cases holding that it is inappropriate to consider claims raised for the first time in opposition to summary judgment), *aff'd*, 445 F. App'x 389 (2d Cir. 2011). Further, Plaintiffs do not offer any opposition to the County's arguments for dismissing the § 1985 claim asserted in the Complaint. The Court thus concludes that Plaintiffs have abandoned any conspiracy claim under 42 U.S.C. § 1985. *See Southerland v. City of New York*, 680 F.3d 127, 139 n.12 (2d Cir.), *reh'g en banc denied*, 681 F.3d 122 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 980 (2013); *see also Brandon*, 705 F. Supp. 2d at 268 (collecting cases dismissing claims as abandoned based on failure to address them in opposition to defendant's motion). Therefore, the County's motion for summary judgment on Plaintiff's § 1985 conspiracy claim is GRANTED.

### V. Plaintiffs' State Law Claims

Where, as here, all federal law claims are eliminated before trial, the "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction over any remaining state law claims. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Having dismissed all federal claims asserted in the complaint, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. *See* 28 U.S.C. § 1367(c)(3). Therefore, Plaintiffs' state law claims against the County for false arrest, malicious prosecution and negligence are DISMISSED without prejudice.

### VI. Conclusion

For the reasons set forth above, the County's Motion for Summary Judgment is GRANTED in full. The Clerk of the Court is respectfully directed to terminate the motion. Doc. 32.

Having previously entered default judgment against defendants Allyson Lovitch, Laurel Ralph and Richard Ralph as to liability, Doc. 22, this matter will now be referred to Magistrate Judge Smith to perform an inquest to determine an appropriate award of damages plus reasonable attorney's fees, if any, for the claims against defendants Allyson Lovitch, Laurel Ralph and Richard Ralph.

It is SO ORDERED.

Dated: July 19, 2013
New York, New York

_____
Edgardo Ramos, U.S.D.J.

11